```
                UNITED STATES DISTRICT COURT
                         FOR THE
                    DISTRICT OF VERMONT

Lendon Johnson,                  :
       Plaintiff,                :
                                 :
       v.                        :     File NO. 2:07-CV-261
                                 :
Robert Hofmann, Sandra           :
Olberg, Mark Pelky,              :
       Defendants.               :
```

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 9)

Plaintiff Lendon Johnson, a former Vermont inmate proceeding *pro se*, brings this action claiming that his due process rights were violated when he was denied furlough from prison. The defendants have moved to dismiss, arguing that Johnson had no liberty interest in being furloughed and thus had no right to due process. The defendants also argue that Johnson's claims for relief are barred by sovereign and qualified immunity. The motion to dismiss is unopposed.

For the reasons set forth below, I recommend that the motion to dismiss be GRANTED and that this case be DISMISSED.

### Factual Background

For purposes of the motion to dismiss, the facts alleged in the complaint will be accepted as true. Johnson was originally incarcerated in state prison after being

convicted of lewd and lascivious conduct with a child.  In mid-2006, the Department of Corrections ("DOC") considered him for furlough.  As part of Johnson's furlough application process, an address was submitted as a potential place for him to live after his release.  The address was reviewed by DOC personnel and rejected.  Consequently, Johnson was denied furlough at that time.

Johnson now argues that the denial of furlough violated his due process rights.  Specifically, he contends that the DOC did not follow its own procedures for approving a furlough residence, and failed to provide him written notice of the denial.  The DOC procedure in question involved the use of a "Residence Approval Checklist."  (Paper 4-2 at 7).  The checklist asked questions such as whether there will be drugs or alcohol in the residence, and whether there is a likelihood that the inmate will have "unplanned contact with the victim."  Id.  In Johnson's case, five of the six questions received responses in the negative, while the question about "unplanned contact" was marked "unknown."

The checklist form required that "[i]f all of the above are answered NO, then the residence shall be approved and staff will schedule contact visits at/in the home."  Id.

The form further stated that if any item was answered with a "YES" and there was "a connection between the 'yes' issues and the current conviction as it relates to risk, then the approval of the residence needs to be staffed with the CWS and Superintendent." The form also provided space for a written "Plan" in the event that the proposed residence was rejected. In Johnson's case, that space was left blank. (Paper 4-5 at 12).

After he was denied furlough, Johnson filed a grievance. The Investigating Officer reported that the checklist form, as completed by the DOC, was confusing and lacked supporting documentation. It was therefore recommended that Johnson proceed to the final grievance level. Johnson alleges that he received no response at the final level, and was compelled to file a petition for review of governmental action in state court. The state court denied the petition as moot, citing that fact that Johnson had been released on furlough since his filing and was no longer incarcerated.

Johnson brings his current suit pursuant to 42 U.S.C. § 1983. The defendants are DOC Commissioner Robert Hofmann, prison Superintendent Sandra Olberg, and Field Supervision

Unit employee Mark Pelky.  For relief, Johnson seeks punitive damages and damages for emotional distress.

## Discussion

### I. Motion to Dismiss Standard

The defendants now move to dismiss the complaint.  On a motion to dismiss, the Court must accept as true the factual allegations in the complaint, and must draw all inferences in the plaintiff's favor.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  To survive dismissal, a complaint must plead enough facts to be plausible on its face.  Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).

### II. Liberty Interest In Furlough

The defendants first argue that Johnson cannot raise a due process claim because he had no liberty interest in obtaining furlough.  To successfully state a claim for denial of due process, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient process. See Tellier v. Fields, 260 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); Hynes v. Squillance, 143 F.3d 653, 658

(2d Cir. 1998); Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996). "[T]he first inquiry in the analysis of an alleged due process violation is whether there exists a protected liberty interest" which is at stake in the case. Barna v. Travis, 1999 WL 305515, at *1 (N.D.N.Y. Apr. 22, 1999) (citing Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989)).

In Sandin v. Conner, 515 U.S. 472 (1995), the U.S. Supreme Court ruled that a prisoner's liberty interests are limited to freedom from restraints imposing an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Subsequently, the Second Circuit has held that inmates who are denied access to a release program do not suffer the sort of "atypical and significant hardship" required under Sandin. Lee v. Governor of State of New York, 87 F.3d 55, 58-59 (2d Cir. 1996). "Not only will plaintiffs not be subject to a 'major disruption' in their environment, they will not be subject to any change in their environment. Plaintiffs will simply continue in the regular prison program until the end of their sentences, as do many other inmates." Id. at 58. This reasoning applies here, as the

denial of furlough did not alter Johnson's status such that he suffered "atypical or significant hardship." See, e.g., Majid v. Malone, 1996 WL 134756, at *3 (March 26, 1996) (denial of furlough request does not represent "atypical an significant hardship").

In support of his claim to a liberty interest, Johnson cites Morrissey v. Brewer, 408 U.S. 471 (1972), in which the Supreme Court held that the due process clause protects the liberty interest of a person on parole.  See also Young v. Harper, 520 U.S. 143, 152-53 (1997) (holding that Oklahoma's conditional release program was similar to the parole program in Morrissey, thus entitling its recipients to due process protections).  The Morrissey decision identified several aspects of parole that made a parolee's interest in liberty similar to that of other citizens, including the freedom to be employed and to see family and friends.  The Court also noted the "implicit promise that parole will be revoked only if [the parolee] fails to live up to the parole conditions."  Morrissey, 408 U.S. at 482.

The instant case is distinguishable from Morrissey in at least one significant respect: Johnson had not yet been released from prison.  Because he was still incarcerated,

6

Johnson had not begun to enjoy any of the freedoms cited in the Morrissey decision. As the Supreme Court noted in Greenholtz v. Nebraska Penal Inmates, "[t]here is a crucial distinction between being deprived of a liberty one has . . . and being denied a conditional liberty that one desires." 442 U.S. 1, 9 (1979); see also Parker v. Gorcyk, 170 Vt. 263, 274 (1999) (citing H. Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267, 1296 (1975) ("there is a human difference between losing what one has and not getting what one wants")).

The Supreme Court has expressly distinguished between the rights associated with an inmates's receipt of parole, and those that attach to the revocation of that parole. Parker, 170 Vt. at 415 (Greenholtz "pointed out the inherent difference between revocation decisions, which generally depend on proving specific facts, and release decisions, which involved a more subtle and subjective assessment of a multitude of factors.") (citing Greenholtz, 442 U.S. at 9-10). While inmates on parole may be entitled to due process protections for the reasons set forth in Morrissey, those reasons do not apply to currently-incarcerated inmates seeking release prior to the expiration of their sentences.

See Greenholtz, 442 U.S. at 10-11 (distinguishing Morrissey); Garson v. Perlman, 541 F. Supp. 2d 515 (2008). Consequently, Morrissey does not require a ruling in Johnson's favor.

Johnson also argues that the mandatory language on the checklist form created an expectation of release, thus entitling him to due process. This argument is misplaced. First, it is clear from Vermont's furlough statute that the granting of furlough is entirely discretionary. See 28 V.S.A. § 808; Parker v. Gorczyk, 170 Vt. 263, 268 (1999); Conway v. Cumming, 161 Vt. 113, 118 (1991) (§ 808(a) contains "no limitations on the discretionary authority granted to the Commissioner"). The statute reads, in relevant part: "The department *may* extend the limits of the place of confinement of an inmate at any correctional facility if the inmate agrees to comply with such conditions of supervision the department, *in its sole discretion*, deems appropriate for that inmate's furlough." 28 V.S.A. § 808(a). Given that the DOC has unbridled discretion with respect to each furlough applicant, it cannot be argued that Johnson had a legitimate expectation of release entitling him to due process protection. See, e.g., Olim v.

Wakinekona, 461 U.S. 238, 249 (1983).

Second, the Sandin decision rejected the premise that mandatory language in a regulation should control the due process analysis.

> Sandin observed that some of our earlier cases, Hewitt v. Helms, 459 U.S. 460, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." Sandin, 515 U.S., at 481, 115 S. Ct. 2293. In Sandin, we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. Id., at 482-483, 115 S. Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.

Wilkinson v. Austin, 545 U.S. 209, 223 (2005); Sandin, 515 U.S. at 480-81 (former methodology "encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements."). As discussed above, Sandin requires a change in conditions of confinement that Johnson did not experience. His complaint should, therefore, be DISMISSED for lack of a protected liberty interest.

II. Official Capacity Immunity

Even assuming a valid due process claim, Johnson's request for damages brought against the defendants in their

9

official capacities is barred by the Eleventh Amendment. The Eleventh Amendment bars suits for damages brought in federal court against unconsenting states or state officials sued in their official capacities. See Edelman v. Jordan, 415 U.S. 651, 663 (1974). A state may waive its Eleventh Amendment immunity so long as the waiver is unequivocally expressed. Atascadero State Hospital v. Scanlon, 473 U.S. 234 (1985). Additionally, Congress may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment. Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976). Section 1983 does not override Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332, 341 (1979).

In this case, there is no indication that Congress has abrogated Vermont's sovereign immunity. It is also clear that Vermont has not waived its immunity under the Eleventh Amendment. See 12 V.S.A. § 5601(g). Therefore, any claims for damages brought against Hofmann, Olberg and Pelky in their official capacities should be DISMISSED.

III.  Individual Capacity Immunity

The defendants further argue that defendants Hofmann and Pelky, sued in their individual capacities, are entitled to dismissal because of their lack of involvement in any

alleged wrongdoing.  With respect to Pelky, the complaint lists him as a defendant but makes no specific allegations against him.  As to Commissioner Hofmann, the claim is that Hofmann "knew or should have known" that Johnson's due process rights were being violated.  Accordingly, Hofmann is clearly being sued for his role as a supervisor in the DOC.

"It is well settled in this Circuit that personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  While "respondeat superior cannot form the basis for a § 1983 claim," Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998), the personal involvement of a supervisory defendant in a § 1983 claim may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant

exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.  See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Here, there is no allegation that Hofmann had any direct involvement in the events in question.  Nor is there any indication that Hofmann had actual knowledge of Johnson's due process issue.  The complaint does not allege that Johnson's treatment was due to an unlawful DOC policy or custom, or that Hofmann failed to adequately supervise DOC employees in a manner that was grossly negligent.  Given § 1983's requirement of personal involvement, and Johnson's failure to allege such involvement on the part of Hofmann and Pelky, the claims against these defendants should be DISMISSED.

IV.  Qualified Immunity

The defendants' final argument is that Superintendent Olberg is entitled to qualified immunity.  Johnson claims that Olberg wrongfully circled "DENIED" on the checklist and then failed to notify him in a timely manner of the DOC's decision.  (Paper 4 at 5).

12

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts must first determine whether, accepting the plaintiff's factual allegations as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). If there is a constitutional violation, courts then proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002) (citing Hope v. Pelzer, 536 U.S. 730 (2002)).

Here, the Court need not continue to the second prong. As discussed above, Johnson has failed to state a constitutional violation. Defendant Olberg is, therefore, entitled to qualified immunity.

V.   Leave to Amend

The Second Circuit has urged that "when addressing a *pro se* complaint, a district 'court should not dismiss without granting leave to amend at least once when a liberal

13

reading of the complaint gives any indication that a valid claim might be stated.'" Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991)).  In this case, Johnson's entire claim rests on the validity of his due process argument.  Because that argument is legally flawed, additional allegations and/or arguments would have no impact on the strength of his claims.  I therefore recommend that the Court decline to grant him leave to amend his complaint.

## Conclusion

For the reasons set forth above, I recommend that the defendants' unopposed motion to dismiss (Paper 9) be GRANTED, and that this case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 25<u>th</u> day of June, 2008.

/s/ Jerome J. Niedermeier  
Jerome J. Niedermeier  
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).